ROBERT E. FREITAS (STATE BAR NO. 80948)
JACOB A. SNOW (*Pending Admission*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

Attorneys for Petitioner
MiTAC International Corporation

E-FILING

ADR

Filed #99 SI Pd

JUN 18 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITAC INTERNATIONAL CORPORATION,<br>Petitioner,<br>v.<br>MNI, INC.,<br>Respondent. | Case No. CV10-02680<br>**PETITION TO CONFIRM ARBITRAL AWARD AND FOR ENTRY OF JUDGMENT**<br>HRL |

1. This is an action to enforce an arbitral award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. On December 14, 2008, Petitioner MiTAC International Corporation ("MiTAC") entered into an Asset Purchase Agreement (the "APA") to purchase certain assets and liabilities related to MNI Inc.'s ("MNI") (formerly known as Magellan Navigation, Inc.) business of developing and selling GPS-navigation devices for the United States consumer market. The APA required submission of certain disputes between MiTAC and MNI regarding the value of the assets to an arbiter, jointly retained by the parties, whose determination would be final and binding.

2. After closing, the parties disagreed as to the value of the purchased assets. MNI objected in writing to MiTAC's valuation, and the matter was submitted to an arbiter, Ed Westerman of LECG, LLC ("the Arbiter") for final resolution. On September 3, 2009, the Arbiter issued his Determination of Actual Net Book Asset Value (the "Award"). The Arbiter determined that MNI had overstated the value of the purchased assets by $18,102,537. Under the APA, the Arbiter's determination is final and binding on the parties.

3. MiTAC hereby petitions for a judgment confirming the Award pursuant to the Federal Arbitration Act.

4. Petitioner MiTAC is a company organized under the laws of the Republic of China with its principal place of business at No. 1 R&D 2nd Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan, R.O.C.

5. Based on information and belief, Respondent MNI is a corporation organized under the laws of Delaware with its principal place of business at 451 El Camino Real, Suite 210, Santa Clara, California, 95050.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between Petitioner and Respondent, and there is more than $75,000, exclusive of interest and costs in controversy. The arbitration award arises out of the APA, an agreement evidencing a transaction affecting interstate commerce.

7. The parties have consented to jurisdiction and venue in federal court in the Northern District of California pursuant to the APA's choice-of-forum clause, which provides that "THE PARTIES AGREE THAT JURISDICTION AND VENUE IN ANY ACTION BROUGHT BY ANY PARTY PURSUANT TO THIS AGREEMENT SHALL PROPERLY LIE EXCLUSIVELY IN ANY FEDERAL (OR, ONLY IN THE EVENT THAT FEDERAL JURISDICTION IS NOT AVAILABLE, STATE) COURT LOCATED IN SAN FRANCISCO, CALIFORNIA."

8. Venue is also proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c), and under 9 U.S.C. § 9 because the award was made in this district, and because a substantial part of the events occurred in this district. Venue is additionally proper in this Court under the APA's choice-of-forum clause, which states that "THE PARTIES IRREVOCABLY AGREE THAT VENUE WOULD BE PROPER IN [SAN FRANCISCO FEDERAL COURT], AND HEREBY WAIVE ANY OBJECTION THAT SUCH COURT IS AN IMPROPER OR INCONVENIENT FORUM FOR THE RESOLUTION OF SUCH ACTION."

9. On December 14, MiTAC and MNI signed the APA, under which MNI would sell to MiTAC certain assets related to its business. Pursuant to the APA, on the date of closing, MNI would convey to MiTAC the Purchased Assets, along with other instruments and agreements necessary to effect the conveyance. In exchange, MiTAC would deliver to MNI via wire transfer funds including the amount of the "Closing Net Book Asset Value." The "Closing Net Book Asset Value" is defined as the value of the purchased assets, as determined by MNI, as of the date of closing.

10. The APA provided for correction of the Closing Net Book Asset Value amount, as well as procedures for resolving disputes about the final valuation of the purchased assets. Under Section 3.03(a), MNI was required to submit, within five days after closing, a computation

of the Net Book Asset Value as of the date of closing (called the "Initial Closing Statement). If the difference between the valuation in the Initial Closing Statement and the Closing Net Book Asset Value exceeded a threshold amount set forth in the APA, the party in arrears was required to pay the other party the difference.

11. Within forty five days of the Closing Date, MiTAC was required to prepare and deliver to MNI its own computation of the Net Book Asset Value as of the Closing Date (called the "Final Closing Statement). After receiving MiTAC's computation, MNI had thirty days to provide written notice (called the "Objection Notice") to MiTAC of MNI's calculation of the Net Book Asset Value, including specific objections to MiTAC's calculations in the Final Closing Statement. If the thirty days had passed without MNI delivering its Objection Notice, the Final Closing Statement would have become conclusive and binding on the parties.

12. On March 25, 2009, MNI delivered an Objection Notice to MiTAC (entitled "Notice of Disagreement").

13. The APA then required that the parties use "reasonable efforts to resolve any disagreements as to the computation of Net Book Asset Value . . . , but if they do not obtain a final resolution within thirty (30) days after [MiTAC] has received the Objection Notice, [the parties] will jointly retain an accounting firm . . . with expertise in financial analysis and valuations or regional, national, or international statute (the 'Arbiter') to resolve any remaining items of dispute."

The APA sets out the Arbiter's task as follows:

> The Arbiter's determination as to each Item of Dispute submitted to it shall be (i) based solely on the definition of Net Book Asset Value included herein and written presentations by [MNI] and [MiTAC] which are in accordance with accordance with the guidelines and procedures set forth in this Agreement (i.e., not on the basis of an independent review) and (ii) in writing. The final determination of the Arbiter will be conclusive and binding upon [MNI] and [MiTAC], and the Final Closing Statement shall be modified to reflect such determination. The Final Closing Statement (as so modified) shall be conclusive and binding upon [MNI] and [MiTAC]. The amount of Net Book Asset Value, as finally determined pursuant to this Section 3.03 (whether by mutual agreement or arbitration), is referred to herein as the "Actual Net Book Asset Value."

14. On September 3, 2009, the Arbiter issued his determination of Actual Net Book Asset Value. The Arbiter concluded that $18,102,537 was due from MiTAC to MNI.

THEREFORE, MiTAC petitions this Court:

1. For an order confirming the Award pursuant to 9 U.S.C. § 9;

2. For a judgment entered in conformity therewith, in favor of MiTAC and against MNI in the amount of $18,102,537.00, plus prejudgment interest from September 3, 2009 to the date of judgment;

3. For post-judgment interest at the legal rate of interest from and after the date of the judgment;

4. For reasonable attorneys' fees and costs incurred herein;

5. For such other relief as the Court deems proper.

Dated: June 18, 2010

ROBERT E. FREITAS
JACOB A. SNOW
ORRICK, HERRINGTON & SUTCLIFFE LLP

[signature]

Robert E. Freitas
Attorneys for Petitioner
MiTAC International Corporation

OHS West:260933801.2
16329-2004 SXJ/SXJ